<u>NOT FOR PUBLICATION</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| LEROY BROOKS, | |
| Petitioner, | Civ. No. 23-155 (RMB) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondent. | |

**RENÉE MARIE BUMB,** Chief United States District Judge

This matter comes before the Court upon Petitioner Leroy Brooks' ("Petitioner") *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 5 "§ 2255 Amended Motion"); Petitioner's Motion to Appoint Counsel (Crim. Dkt. No. 247); Petitioner's Motion to Appoint Counsel (ECF No. 6); The Government's Motion to Dismiss Petitioner's § 2255 Amended Motion (ECF No. 9 "Motion to Dismiss"), and Petitioner's Reply (ECF No. 12 "Reply"; ECF No. 13 "Suppl. Reply"); the Government's Supplemental Authority Submission (ECF No. 14 "Govt.'s Letter"), and Petitioner's Response

1

(ECF No. 15 "Pet.'s Letter").[1]  For the reasons discussed below, the Court denies Petitioner's Motions to Appoint Counsel (Crim. Dkt. No. 247; ECF No. 6) and grants Petitioner's § 2255 Amended Motion (ECF No. 5).

## I.   BACKGROUND

Petitioner is currently serving a 270-month sentence for conspiracy to commit Hobbs Act robbery at FCI Williamsburg in Salters, South Carolina.  (ECF No. 5 at 1.)  On appeal of Petitioner's conviction and sentence, the Third Circuit Court of Appeals set forth the following history of Petitioner's conviction and sentence, arising out of a reverse sting operation organized by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("the Bureau").

> In 2013, the Bureau [of Alcohol, Tobacco, and Firearms] began investigating Alexander Morales for drug distribution and firearms offenses. As part of that investigation, the Bureau used two undercover agents, Steve Ingram and Stacy Brown, to arrange a sting involving a proposed home invasion. In this regard, Ingram—who previously bought heroin from Morales— approached Morales about robbing a drug stash house. Morales expressed interest in Ingram's proposal.
>
> Ingram then arranged a meeting between himself, Morales, and Brown. At the meeting, Brown told Morales that he was a drug courier and needed assistance robbing fifteen kilograms of cocaine from a stash house run by a Mexican cartel. In reality, neither the stash house nor the cocaine existed.
>
> Morales then recruited two other individuals—Brooks and Eladio Santana—to participate in the stash house robbery.

---

[1] References to the record of the original criminal case, docketed at Crim. No. 14-382 (RMB), are shortened to "Crim. Dkt."  References to the instant motion, docketed under Civ. No. 23-155 (RMB), are shortened to "ECF."

On the day of the planned robbery, Ingram drove Morales, Brooks, and Santana to a storage facility in Maple Shade, New Jersey. Before getting into Ingram's car, Brooks—who was already wearing black gloves—placed a canvas bag inside a hidden compartment in the backseat. On the way to the storage facility, Brooks asked a number of questions about the men guarding the stash house.

After Brown greeted the crew at the storage facility, Brooks asked additional questions about the robbery. Subsequently, Morales, Brooks, and Santana were arrested. An evidence collection team then searched the bag that Brooks placed in Ingram's car. The bag contained a black mask, a black ski mask, a black wool hat, a loaded revolver, and two loaded semi-automatic weapons.

Brooks was later charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and carrying firearms during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

In his pretrial motions, Brooks, an African-American, moved to dismiss for selective enforcement and sought discovery regarding the Bureau's stash-house sting operation, which he alleged to be racially motivated. The District Court denied the motion, concluding that Brooks failed to meet the requirements for obtaining discovery under *United States v. Armstrong*. Brooks also moved to dismiss for outrageous government conduct and lack of jurisdiction over the conspiracy to commit Hobbs Act robbery charge. The District Court denied these motions as well.

Before trial, the Government also submitted "Joint Requests to Charge" to the District Court. In relevant part, Request No. 49 provided that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c).

In January 2016, Brooks was tried by jury. At the charge conference, the District Court reviewed the "Joint Requests

3

> to Charge" with the parties "page by page." When the District Court reached Request No. 49, Brooks did not object to the jointly proposed instruction on the basis that conspiracy to commit Hobbs Act robbery is not a crime of violence. Brooks also did not make that objection when the District Court discussed the § 924(c) jury instructions the next day. Thereafter, the District Court instructed the jury that conspiracy to commit Hobbs Act robbery is a crime of violence. Following the charge, there were no "exceptions to the charge as read."
>
> The jury convicted Brooks on all counts. Brooks then filed a post-trial motion arguing, inter alia, that the District Court erred in instructing the jury that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c). The District Court denied the post-trial motion.
>
> At sentencing, the District Court found that Brooks was a career offender under U.S.S.G. 4B1.1. Because Brooks qualified as a career offender, his offense level automatically became 37. Thus, Brooks faced an advisory Guidelines range of 360-months to life, plus a mandatory consecutive sentence of 60 months for the § 924(c) offense. The District Court also denied Brooks' request for a two-level minor-role reduction. Ultimately, the District Court applied a five-level downward variance and sentenced Brooks to 270 months' imprisonment.

*United States v. Brooks*, 734 F. App'x 120 (3d Cir. 2018), 121-23 (3rd Cir. 2018) (footnotes omitted).

### A.    The Appeal

Petitioner raised the following issues on direct appeal:  (1)  the District Court erred in declining to dismiss for outrageous government conduct; (2) the District Court erred in not dismissing the conspiracy to commit Hobbs Act robbery charge for lack of jurisdiction; (3) the District Court erred in not applying a two-level minor-role adjustment at sentencing; (4) the District Court erred in instructing the jury that

conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c); and (5) the District Court erred in denying his motion for discovery on his selective enforcement claim. *Brooks*, 734 F. App'x at 123.  The Third Circuit denied the first two claims on the merits and the third claim as moot.  *Id.* at 123-24.

On Petitioner's fourth claim, his challenge to the jury instruction on conspiracy to commit Hobbs Act robbery, the Third Circuit held as follows:

> Relying on *Johnson v. United States*, [576 U.S. 591 (2015),] Brooks further contends that the District Court erroneously instructed the jury that conspiracy to commit Hobbs Act robbery is a crime of violence.  Nevertheless, Brooks waived this claim by jointly proposing—well after *Johnson* issued— the very jury instruction he now challenges.

*Id.* at 124.

Finally, the Third Circuit addressed Petitioner's fifth claim, that the District Court applied the incorrect framework in its analysis of Petitioner's discovery motion on a selective enforcement claim.  The Third Circuit held as follows:

> In light of Brooks' allegations of racial bias in the Bureau's stash-house sting program, we exercise our discretion to vacate the District Court's discovery order and remand for limited post-judgment proceedings consistent with [*United States v. Washington*, 869 F.3d 193 (3d Cir. 2017)].  In so doing, "[w]e emphasize that we are not directing the District Court to grant discovery."  "Rather, we commit the inquiry to the District Court's considerable discretion."

*Id.* at 125 (quoting *Washington*, 869 F.3d at 221-22).  The Third Circuit affirmed the judgment of conviction and sentence, and, in a footnote, noted that the judgment of conviction and sentence were otherwise unaffected by the remand.  *Id.* at 125, n. 26

5

(quoting *Washington*, 869 F.3d at 198 "[t]he judgment of conviction and sentence are otherwise unaffected by this remand.")

### B.    Post-Remand Proceedings

Following the remand, on January 18, 2019, this Court granted Petitioner's renewed motion for discovery (Crim. Dkt. Nos. 154, 155, Crim. No. 14-382 (RMB)). Petitioner filed a second discovery motion, which was later dismissed as moot (Crim. Dkt. No. 186), and a third discovery motion that was denied (Crim. Dkt. No. 220). Petitioner filed an appeal and subsequently withdrew it (Crim. Dkt. Nos. 221, 225, 226.) On July 11, 2023, Petitioner's counsel at the time informed the Court that he does not believe there is a non-frivolous basis to file a motion to dismiss for selective enforcement based on the discovery that was provided after the Court granted Petitioner's first motion for discovery (Crim. Dkt. No. 238.) Shortly thereafter, Petitioner's counsel filed a renewed application to withdraw as counsel, certifying that, given the discovery produced to date, he cannot assert a non-frivolous selective enforcement claim on behalf of Petitioner, and accordingly, the Court granted the application on October 4, 2024 (Crim. Dkt. No. 246.) Six days later, Petitioner filed a motion to appoint counsel to pursue a selective enforcement claim (Crim. Dkt. No. 247), asking the Court to appoint counsel to pursue the claim.

In the Court's memorandum order granting Petitioner's prior counsel's motion to be relieved as counsel, the Court explained the status of Petitioner's selective enforcement claim. (Crim. Dkt. No. 246.) The Court explained as follows:

On remand, Brooks moved for discovery to support a selective enforcement claim. [Docket No. 152.] This Court granted that motion, ordering the Government to turn over a slew of information in the ATF files on stash house robbery sting operations. [Docket Nos. 154-55.] Over a year later, Brooks' counsel asked this Court to conduct an in-camera review of certain documents that the Government had redacted. [Docket No. 167.] The Court found the request improper, finding Brooks appeared to "seek documents/information that goes well beyond" the Court's earlier rulings granting discovery. [Docket No. 168.] The Court eventually denied that request as the parties apparently worked out their discovery dispute. [Docket No. 186.]

Brooks then flooded this Court with a host of motions, ranging from multiple motions for compassionate release to uncounseled motions. [Docket Nos. 169-70, 173.] Brooks' then-counsel moved to be relieved because of irreconcilable differences. [Docket No. 188.] Brooks also asked for a new attorney. [Docket No. 189.] The Court granted counsel's request, and appointed Wolf to represent Brooks in connection with the Third Circuit's limited remand on discovery for a selective enforcement claim. [Docket Nos. 194, 196-97.]

A few months after his appointment, Wolf moved for additional discovery to support a selective enforcement claim on Brooks' behalf. [Docket No. 218.] After reviewing the discovery the Government produced and conducting his own research, Wolf requested that the Court order the Government to produce certain documents prepared by ATF Special Agent Richard Zayas on "the selection process" the ATF employs "when targeting defendants in reverse stash house robbery stings[]" (the Zayas Materials). [Cert. of Robert C. Wolf, Esq. ¶¶ 10-11 (Wolf Cert. I) (Docket No. 218-1).] Wolf certified that the Government turned over the Zayas Materials in another prosecution involving a selective enforcement claim pending in the United States District Court for the Northern District of Illinois. [*Id.* at ¶¶ 13, 16.] Wolf asserted the Zayas Materials were relevant because they appear to provide directions to

7

implementing ATF policy on stash house robbery sting operations. [*Id.* at ¶ 17.]

To expedite discovery, this Court ordered the Government to produce the Zayas Materials for an in-camera review to "determine whether the materials have any relevance to the narrow issue on remand." [Docket No. 219.] After conducting the review, the Court denied Brooks' motion for discovery of the Zayas Materials. [Docket No. 220.] The Court found those materials "do not advance [Brooks'] claim at all." [*Id.*] Brooks immediately appealed that order, but ultimately withdrew the appeal. [Docket Nos. 221, 225.]

. . .

Having reviewed the Status Report, Wolf's moving papers, and the record here, the Court grants Wolf's request to be relieved as counsel. The Status Report and Wolf's moving papers reveal all the work he performed on Brooks' behalf to bring a potential selective enforcement claim. Wolf has certified to the Court that the discovery produced so far, in his view, will only satisfy the "discriminatory effect" element for a selective enforcement claim. [Docket No. 238.] He has no discovery to show the "discriminatory purpose" element. [*Id.*] Based on his review of the discovery produced here (and discovery produced in other cases), Wolf sees "no pathway to a valid" selective enforcement claim. [*Id.*] Given Wolf's representations and the record, the Court finds he has thoroughly examined the discovery materials and adequately explained why he cannot, consistent with his ethical obligations, pursue a selective enforcement claim on Brooks' behalf. *See Anders*, 386 U.S. at 744 (requiring appellate counsel to conduct a "conscientious examination" of the record before seeking to withdraw as counsel).

The Court also notes the Third Circuit ordered a limited remand for this Court to reexamine Brooks' discovery request given *Washington*. *Brooks*, 734 F. App'x at 125. After remand, the Court heard Brooks' motion for discovery, granted it, ordered discovery, and entertained additional discovery requests. Accordingly, the Court has satisfied the Third Circuit's remand.

(*Id.*)

## C.    The § 2255 Proceedings

Petitioner filed his original § 2255 Motion on January 9, 2023.  (ECF No. 1.)

Petitioner subsequently filed his § 2255 Amended Motion on August 8, 2023.  (ECF

No. 5.)  In his § 2255 Amended Motion, Petitioner raises four grounds for relief.  In

Ground One, Petitioner asserts that pursuant to *United States v. Taylor*, 596 U.S. 845

(2022), he is "actually innocent" of violating 18 U.S.C. § 924(c) because conspiracy to

commit Hobbs Act robbery is no longer a valid predicate crime.  (*Id.* at 4.)  For his

second ground for relief, Petitioner contends his sentence is excessive in light of *Taylor*,

*supra*, and argues as follows:

> [T]he government lacks jurisdiction "to secure … a charge"
> against Brooks because the "jury was erroneously instructed
> of the elements in connection with his count 4 924(c)
> violation as a predicate offense of conspiracy to commit
> robbery that was never completed as [a]
> conspiracy/attempt" post *Taylor*.

(*Id.* at 5.)  Furthermore, Petitioner asserts the following, incorporated by reference

from his original § 2255 Motion:

> In *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the
> Supreme Court held that the residual clause is
> unconstitutionally vague.  Thus the only way Petitioner['s]
> section 924(c) conviction is constitutional is if it qualifies
> under the elements clause.  Moreover, since *Davis*, the Third
> Circuit has made clear that a conspiracy cannot constitute a
> crime of violence under 924(c).
>
> Recently, however, the Supreme Court, *United States v.
> Taylor*, 142 S. Ct. at 2021 held that conspiracy to commit

> Hobbs Act Robbery and attempted Hobbs Act Robbery is not a crime of violence under the elements clause . . .
>
> *Taylor* confirms that Petitioner's conspiracy to commit robbery (Hobbs Act Robbery) conviction cannot serve as a predicate offense for his section 924(c) conviction.

(*Id.*; ECF No. 1 at 2.)

In Ground Three of his § 2255 Amended Motion, Petitioner contends that, post *Taylor*, his § 924(c) conviction is invalid because the jury instruction constructively amended the indictment and impermissibly broadened the basis for conviction.  (ECF No. 5 at 7.)  In his fourth and final ground for relief, Petitioner submits that, in light of *Taylor*, "the District Court jury instruction was prejudicial and "was a *Stromberg v. California*, 283 U.S. 359, 368 (1931) error."[2]  (*Id.* at 8.)

**D.    The Government's Motion to Dismiss**

In response, the Government moves to dismiss Petitioner's § 2255 Amended Motion arguing that Petitioner is not entitled to relief under § 2255 for the following reasons:  (1) the motion is untimely, as it is barred by the one-year statute of limitations; (2) the claims are procedurally defaulted; and (3) the claims nonetheless fail on the merits. (ECF No. 9-1 "Govt.'s Brief".)

**E.    Petitioner's Reply**

Petitioner opposes the Motion to Dismiss, challenging the Government's conclusion that his § 2255 Motion is untimely.  (ECF No. 12 at 3, Reply.)  He asserts

---

[2] In *Stromberg*, the Court held that "if any of the clauses [of the statute] in question is invalid under the Federal Constitution, the conviction cannot be upheld."  283 U.S. at 368.

that his claim of actual innocence, in light of *Davis* and *Taylor*, overcomes the one-year limitations period.  (*Id.* at 3, 5.)  Petitioner also asserts that the Government waived, forfeited, and/or defaulted its opposition to his § 2255 Amended Motion by making only cursory reference to the merits of his claims.  (*Id.* at 3-4.)  Petitioner seeks appointment of counsel for an evidentiary hearing on the Government's waiver of its opposition to his claims.  (*Id.* at 4.)  Petitioner then supplemented his reply with authority that actual innocence claims should be heard on the merits, despite any time-bar.  (ECF No. 13 at 1.)

F.    **Supplemental Authority Submitted by the Government and Petitioner's Response**

On February 9, 2024, the Government submitted a slip opinion of the Third Circuit's nonprecedential opinion, *In re Andrews*, No. 23-1167, 2024 WL 467521, at *2 (3d Cir. Feb. 7, 2024), in which the Third Circuit held that a § 2255 motion seeking to invoke the new constitutional rule announced in *Davis*, that the residual clause of 18 U.S.C. § 924(c) was unconstitutionally vague, must have been filed by June 24, 2020. (ECF No. 12 at 1.)  By contrast, *Taylor*, which held that Hobbs Act robbery was not a "crime of violence" under the elements clause of § 924(c), addressed a question of statutory interpretation, not a new rule of constitutional law.  (*Id.*)   Thus, the Government emphasized its position that Petitioner's motion was untimely.  (*Id.*)  In response, Petitioner submitted that his case is distinguishable from *Andrews*, and that the Government's motion should be denied and "considered a desperate attempt to

11

make up for [its] own failure to respond to [P]etitioner's motion." (ECF No. 15 at 1, "Pet.'s Letter".)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a). "The statute's language 'is somewhat lacking in precision' but 'afford[s] federal prisoners a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].'"  *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)).  "The scope of relief does not reach 'every asserted error of law.'"  *Id.* (quoting *Davis*, 417 U.S. at 346).  Instead, § 2255 provides relief for jurisdictional and constitutional claims, as well as limited types of nonconstitutional claims, such as sentencing errors that violate fair procedure or amount to a miscarriage of justice.  *See Id.* (internal citations omitted).  A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Bentley*, 49 F.4th 275, 283 (3d Cir. 2022).

Moreover, as a § 2255 motion is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).  "[R]elief under § 2255 is available only when "the claimed

12

error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and . . . 'present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *Travillion*, 759 F.3d at 288 (quoting *Davis*, 417 U.S. at 346) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

## III.    DISCUSSION

### A.    Petitioner's Motion to Appoint Counsel to Pursue Selective Enforcement Claim

On October 10, 2025, Petitioner filed a motion to appoint counsel to pursue his selective enforcement claim. (Crim Dkt. No. 247.) As it relates to Petitioner's motion to appoint counsel to pursue his selective enforcement claim, this Court has granted Petitioner's prior counsel's motion to be relieved as counsel based on his explanation that he was unable to ethically pursue a selective enforcement claim on Petitioner's behalf. (Crim. Dkt. No. 246 at 9.) Moreover, this Court reviewed the discovery and agreed that Petitioner's prior counsel adequately explained why he cannot, consistent with ethical obligations, pursue the selective enforcement claim. (*Id.*) In addition, this Court has determined that the Bureau did not target Petitioner, which effectively ends any further adjudication of Petitioner's repeated attempts to assert a selective enforcement claim. (*Id.* at 3.) Furthermore, the Third Circuit also issued a limited

remand to address Petitioner's request for discovery related to his selective enforcement allegations, where this Court heard Petitioner's discovery motion, granted it, ordered additional discovery, and entertained discovery requests to support the selective enforcement claim. (*Id.* at 9-10.) Because Petitioner received multiple opportunities to support his selective enforcement claim and because his prior counsel adequately explained why he could no longer pursue such claim, the Court denies Petitioner's Motion to Appoint Counsel to pursue such claim.

    **B.**    **Petitioner's Motion to Appoint Counsel and Request for an Evidentiary Hearing**

Next, the Court acknowledges Petitioner's (1) motion to appoint counsel (ECF No. 6) and (2) request for counsel for an evidentiary hearing on the Government's waiver of its opposition to his claims (ECF No. 12 at 4.) 18 U.S.C. § 3006A(2)(b) provides that, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who— . . . is seeking relief under section 2241, 2254, or 2255 of title 28." Under this provision, the interests of justice require appointment of counsel when a petitioner has presented a nonfrivolous claim and the appointment of counsel will benefit the petitioner and the court. *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d). Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the *pro se* petitioner's ability to investigate facts and present claims. *Id.* at 263-64.

Further, § 2255 provides that in a motion to vacate or correct the sentence, a court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and file and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In such a case, the movant's factual allegations are to be considered in the light most favorable to him. *United States v. Biberfeld*, 957 F.2d 98, 99 (3d Cir. 1992). Nonetheless, where a § 2255 motion "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).

For the reasons discussed below, accepting Petitioner's factual allegations as true, the record conclusively shows that Petitioner is not entitled to relief. Moreover, the Court does not find that the appointment of counsel is warranted. Petitioner has competently filed both his § 2255 Motion and § 2255 Amended Motion, and the issues involved in this case do not appear overly complex. Although Petitioner is a layman of the law, his *pro se* § 2255 Motion, § 2255 Amended Motion, and Reply all demonstrate that he has sufficient knowledge of the facts and applicable law to effectively present his claims to the Court. *See Reese*, 946 F.2d at 263-64. Petitioner was also able to review the extensive record and present plausible claims for relief. *Id.* Therefore, Petitioner's request for counsel is not in the interest of justice and an evidentiary hearing is not required. *Id.* at 264 (finding district court did not abuse its discretion by denying appointment of counsel to habeas petitioner where no evidentiary hearing was required, and the petitioner had the ability to forcefully

15

present his claims).

### C.    Timeliness

The Court begins by addressing the timeliness of Petitioner's § 2255 Motion. Motions filed under § 2255 are subject to a one-year limitations period that can run from one of four starting points.  28 U.S.C. § 2255(f) sets forth as follows:

> [A] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The Government invokes the first and third provisions, asserting that Petitioner fails to satisfy § 2255(f)(1) and (f)(3) because he brought his § 2255 Motion more than one year after his conviction became final and more than one year after the Supreme Court decided *Davis*.  (ECF No. 9-1 at 6.)

On June 24, 2019, in *Davis*, 588 U.S. 445, 469 (2019), the Supreme Court announced a new, retroactively applicable rule of constitutional law by invalidating

the residual clause of § 924(c) as unconstitutionally vague, leaving only the elements clause of the provision's definition of "crime of violence." On June 21, 2022, the Supreme Court held in *Taylor*, 596 U.S. 845, 851 (2022), that an *attempted* Hobbs Act robbery does not qualify as a crime of violence under the elements clause of the statutory definition of "crime of violence" as a predicate for a felony conviction and enhanced sentence for using a firearm in furtherance of a crime of violence (emphasis added).

In a recent decision, the Third Circuit held that, "*Taylor* addressed a question of statutory interpretation, not a new rule of constitutional law." *In re Andrews*, No. 23-1167, 2024 WL 467521, at *2 (citing *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997)) (distinguishing "substantive statutory holding[s]" from "new rule[s] of constitutional law"), *abrogated on other grounds by Jones v. Hendrix*, 599 U.S. 465 (2023). The Third Circuit further explained that,

> [i]n *Taylor*, the Court held that attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), did not constitute a "crime of violence" under the elements clause of 18 U.S.C. § 924(c); 596 U.S. at 860. But it did so merely by applying the reasoning in *Davis* and interpreting the term "crime of violence" under § 924(c), *see id.* at 850–59, not by announcing a new constitutional rule, and Andrews points to no court of appeals that has held otherwise.

*Id.* While the *In re Andrews* holding was related to the applicability of § 2255(h)(2), the Court finds that it applies equally to § 2255(f)(3). *Compare* § 2255(h)(2) ("a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"), *with* § 2255(f)(3) ("the date on which the

17

right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"); *see also In re Hoffner*, 870 F.3d 301, 307 (3d Cir. 2017) (discussing the interplay between 28 U.S.C. § 2255(f)(3) and § 2255(h)(2)).

To determine the statute of limitations under § 2255(f)(1), the Court looks to the finality of the judgment of conviction. As the Supreme Court has explained, "[b]y 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987). "Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence." *Flynt v. Ohio*, 451 U.S. 619, 620 (1981). When an order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgement[,]" the decision is final. *Virgin Islands v. Simmonds*, 837 F. App'x 109, 111 (3d Cir. 2020) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

On May 17, 2018, the Court of Appeals affirmed Petitioner's judgment of conviction and sentence and ordered a limited remand as it relates to Petitioner's discovery motion on a selective enforcement claim. *Brooks*, 734 F. App'x at 125. The Third Circuit addressed Petitioner's fifth claim, that the District Court applied the incorrect framework in its analysis of Petitioner's discovery motion on a selective enforcement claim. *Id.* The Third Circuit held as follows:

> In light of Brooks' allegations of racial bias in the Bureau's stash-house sting program, we exercise our discretion to vacate the District Court's discovery order and remand for

> limited post-judgment proceedings consistent with [*United States v. Washington*, 869 F.3d 193 (3d Cir. 2017)]. In so doing, "[w]e emphasize that we are not directing the District Court to grant discovery. Rather, we commit the inquiry to the District Court's considerable discretion."

*Id.* at 125 (quoting *Washington*, 869 F.3d at 221-22).  The Third Circuit affirmed the judgment of conviction and sentence, and, in a footnote, noted that the judgment of conviction and sentence were otherwise "unaffected by the remand." *Id.* at 125, n. 26 (quoting *Washington*, 869 F.3d at 198 "[t]he judgment of conviction and sentence are otherwise unaffected by this remand.").

Here, the Court finds that the Third Circuit's 2018 decision was non-final because it ordered a remand for further proceedings. *See Virgin Islands*, 837 F. App'x at 111 (finding that when the Appellate Division vacates a criminal sentence and remands the matter for further proceedings, the matter is ongoing and there is no "final decision).  In other words, the Third Circuit remanded the case, albeit partially, to the District Court for further review. *Brooks*, 734 F. App'x at 125.  As such, until the District Court's review concludes and a new judgment is entered, there is no final judgment from which the § 2255(f)(1) statute of limitations period can run. *Id.* While the Court notes that the Third Circuit expressly stated that its remand does not affect Petitioner's conviction and sentence, a finding in favor of Petitioner on his discovery motion in support of his selective enforcement claim could have altered his sentence. *Id.*; *see also United States v. Brazier*, 933 F.3d 796, 801 (7th Cir. 2019) ("Sentences for multiple offenses are generally treated as 'packages,' so that when part of the package is removed on appeal, the district court may reconsider the overall sentencing package

19

on remand.") Accordingly, Petitioner's § 2255 Motion is timely pursuant to § 2255(f)(1).

## D.    Procedural Default

The Court next determines whether Petitioner's claims are procedurally defaulted. Petitioner contends that conspiracy to commit Hobbs Act robbery does not constitute a crime of violence under § 924(c) pursuant to *Taylor*. (ECF No. 5 at 4.) A crime of violence means an offense that is a felony and:

> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)-(B).

The Third Circuit noted that Petitioner failed to preserve his claim, stating as follows:

> Brooks further contends that the District Court erroneously instructed the jury that conspiracy to commit Hobbs Act robbery is a crime of violence. Nevertheless, Brooks waived this claim by jointly proposing—well after *Johnson* [*v. United States*, 576 U.S. 591 (2015)] issued—the very jury instruction he now challenges.

*Brooks*, 734 F. App'x at 124 (citing *United States v. Ozcelik*, 527 F.3d 88, 97 n.6 (3d Cir. 2008)).

The Government argues that although both *Davis* and *Taylor* were not available to Petitioner at the time of his appeal, at the time of Petitioner's 2016 trial, *Johnson v. United States*, 576 U.S. 591 (2015) was available. (ECF 9-1 at 9.) The Government

20

contends that in *Johnson*, the United States Supreme Court struck down the residual clause of the Armed Career Criminal Act ("ACCA"), which is a close relative of the residual clause of § 924(c)(3)(B). (*Id.*) Three years later, as to Petitioner's argument, on June 24, 2019, the Supreme Court held in *Davis* that the residual clause in 18 U.S.C. § 924(c)'s definition of "crime of violence" was also void for vagueness, building upon *Johnson*. *See Davis*, 588 U.S. at 470. Accordingly, the Government argues that Petitioner's claim is procedurally defaulted because the void for vagueness argument could have been raised on direct appeal prior to bringing his § 2255 Motion based on the existence of *Johnson*. 576 U.S. at 597; *Brooks*, 734 F. App'x at 124; (ECF 9-1 at 9.) The Government also concedes that conspiracy to commit Hobbs Act robbery is no longer a crime of violence. (ECF 9-1 at 8.) The Government maintains that this does not affect Petitioner's procedural default because his § 924(c)(1)(A)(i) conviction was predicated on not only conspiracy to commit Hobbs Act robbery, but also on conspiracy to distribute and possess with intent to distribute cocaine. (*Id.*; ECF No. 5 at 1.)

As Petitioner argues, and the Government concedes, conspiracy to commit Hobbs Act robbery is not categorically a crime of violence. *See Wallace v. United States*, 43 F.4th 595, 601 (6th Cir. 2022) (citing *United States v. Ledbetter*, 929 F.3d 338, 360–61 (6th Cir. 2019) ("The [G]overnment has long conceded that conspiracy to commit Hobbs Act robbery does not fit within the elements clause); *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) (holding that conspiracy to commit Hobbs Act robbery is not a crime of violence under the elements clause); *but see Fernandez v. United*

21

*States*, 114 F.4th 1170, 1180-81 (11th Cir. 2024), *cert. denied*, 146 S. Ct. 294 (2025) (holding that although conspiracy to commit Hobbs Act robbery is not a crime of violence, that proposition is irrelevant because the petitioner's challenge to his conviction was statutory and not constitutional relating to the residual clause violation of *Davis*).[3]

Actual innocence may excuse procedural default. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Actual innocence refers to factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To satisfy this standard, first, "a petitioner must present new, reliable evidence" and second, "show by a preponderance of the evidence 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence[.]'" *Reeves v. Fayette SCI*, 897 F.3d 154, 160-61 (3d Cir. 2018), *as amended* (July 25, 2018) (citing *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010)); *see, e.g.*, *Munchinski v. Wilson*, 694 F.3d 308, 336-37 (3d Cir. 2012) (explaining that actual innocence was demonstrated where new evidence both showed that the crime could not have happened in the way the Commonwealth

---

[3] The Court acknowledges that, because the Third Circuit has not directly addressed whether conspiracy to commit Hobbs Act robbery qualifies as a crime of violence, it looks to the reasoning of its sister circuits and agrees that it does not. The Court further notes, however, that the Third Circuit has addressed the broader principle that whether an offense qualifies as a crime of violence can affect a petitioner's sentence. *See United States v. Stoney*, 62 F.4th 108, 111 (3d Cir. 2023) ("Whether or not a crime qualifies as a "crime of violence" under § 924(c)(3)(A) carries significant consequences. It can affect whether a person is eligible for early release.")

presented at trial and provided an alternative theory that was more appropriate and better fit the facts of the case).

The United States Supreme Court has held that a habeas petitioner may raise a claim of actual innocence to avoid a procedural bar through the "miscarriage of justice" prong of the standard for excusing procedural default. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). To raise such a claim, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 327. In other words, a petitioner must establish that "it is more likely than not that no reasonable juror would have convicted him in [] light of the new evidence." *Id.* at 329-30.

In light of *Davis* and *Taylor*, Petitioner may be actually innocent of the § 924(c) offense predicated on Count One, conspiracy to commit Hobbs Act robbery. (ECF No. 5 at 1.) A jury empaneled today could not find, as a factual matter, that Petitioner committed a § 924(c) offense for conspiracy to commit Hobbs Act robbery. *Schlup*, 513 U.S. at 329-30; *see also e.g.*, *United States v. Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019) ("If Reece's convictions were based on the definition of [crime of violence] articulated in § 924(c)(3)(B) [the residual clause], then he would be actually innocent of those charges under *Davis*."); *United States v. Bowen*, 936 F.3d 1091, 1108 (10th Cir. 2019) ("We conclude that Bowen's witness retaliation convictions do not qualify as crimes of violence ... so Bowen is actually innocent of § 924(c)(1)."). As such, to avoid

23

a miscarriage of justice, the Court cannot conclude that Petitioner's § 2255 Amended Motion is procedurally defaulted.[4] *Schlup*, 513 U.S. at 321-22.

Importantly, however, the Court agrees with the Government that because Petitioner was also convicted of a predicate drug trafficking offense under § 924(c)(1)(A)(i), Petitioner's § 2255 Amended Motion fails on the merits. (*See* Superseding Indictment, Crim. Dkt. No. 57, charging violations of 18 U.S.C. § 1951(a), 21 U.S.C. § 846, 18 U.S.C. § 922(g)(1); and 18 U.S.C. § 924(c)(1)(A)(i) and § 2) (*see also* Trial Transcript, Crim. Dkt. No. 113 at 82-88 and 134-35, instructing the jury on § 924(c)(1)(A)(i) charge);[5] (*see also* Verdict Sheet, Crim. Dkt. No. 106 at 3, finding Plaintiff guilty on § 924(c)(1)(A)(i) charge.)  Although Petitioner may be actually innocent of the § 924(c) offense, if the Third Circuit were to so hold that such crime is not a crime of violence, his conviction is not so limited.  Rather, because his conviction was also predicated on a conspiracy to commit a drug trafficking offense,

---

[4] The Court notes the Third Circuit held that Petitioner waived his claim that conspiracy to commit Hobbs Act robbery is not a crime of violence by jointly proposing the jury instruction instructing the opposite. *Brooks*, 734 F. App'x at 124. Nonetheless, the Court concludes that denying Petitioner the opportunity for vacatur on that basis would result in a miscarriage of justice. *Schlup*, 513 U.S. at 321-22.

[5] The Court granted Defendants' motion to sever Count 3 of the Superseding Indictment (Crim. Dkt. No. 93), which caused Count 4 of the Superseding Indictment to be referred to as Count 3 during the first phase of the trial, where the jury found Plaintiff guilty of violating 18 U.S.C. § 924(c)(1)(A)(i) under Count 3 of the Verdict Sheet.

24

as evidenced by the jury verdict,[6] the Court cannot conclude that Petitioner is actually innocent of the § 924(c) conviction.

## IV.   CONCLUSION

Based on the foregoing reasons, the Court denies Petitioner's Motion to Appoint Counsel to Pursue Selective Enforcement Claim in his underlying criminal case (Crim. Dkt. No. 247), denies his Motion to Appoint Counsel and request for an evidentiary hearing (ECF No. 6) in this § 2255 proceeding and denies his § 2255 Amended Motion (ECF No. 5) because his § 924(c) conviction stands based on the predicate of conspiracy to commit drug trafficking.

---

[6] The jury was expressly charged that:

> You may find the defendant guilty of this count if you find beyond a reasonable doubt that the defendant carried one or more of the charged firearms during and in relation with either the robbery conspiracy charged in count 1 of the indictment or the conspiracy to distribute and possess with intent to distribute cocaine charged in count 2 of the indictment. However, you must all unanimously agree on the offense or offenses that the defendant carried one or more of the firearms during and in relation to. If you cannot unanimously agree on the offense or offenses, then you must find the defendant not guilty of this offense.
>
> Likewise, you must unanimously agree on what firearm or firearms the defendant carried during and in relation to either the conspiracy to commit robbery or the conspiracy to distribute and to possess with intent to distribute cocaine. If you cannot unanimously agree on what firearm or firearms the defendant carried, then you must find the defendant not guilty of the offense.

(Crim. Dkt. No. 113 at 86-87.)

An appropriate Order follows.


Dated: **April 28, 2026**


                                        <u>s/Renée Marie Bumb</u>
                                          RENÉE MARIE BUMB
                                          Chief United States District Judge